SHEARSON HAYDEN STONE, INC., a
Delaware Corporation,
Plaintiff-Appellant,

v.

Paul LIANG, Defendant-Appellee.

No. 80–2416.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 23, 1981.

Decided July 10, 1981.

Rehearing Denied September 11, 1981.

Thomas E. Knepper, Chicago, Ill., for counterdefendant-appellant.

Rick Allan White, Chicago, Ill., for counterplaintiff-appellee.

Before SWYGERT,* Circuit Judge, KUNZIG, Judge,** and BAUER, Circuit Judge.

BAUER, Circuit Judge.

The district court refused to set aside an arbitrator's award of $50,000 to defendant-appellee Paul Liang. *Shearson Hayden Stone, Inc. v. Liang,* 493 F.Supp. 104 (N.D. Ill.1980). Plaintiff-appellant Shearson Hayden Stone, Inc. asserts that no evidence supports the award and that the award was obtained by fraud. We affirm.

I

Defendant-appellee Paul Liang was a registered securities broker with plaintiff-appellant Shearson Hayden Stone, Inc. ("Shearson") until May 3, 1978. When he was hired in January 1976, Liang filled out a questionnaire stating that he was employed also as a part-time movie projectionist at the Festival Theatre. The New York Stock Exchange approved this outside employment pursuant to its Rule 346.[1] Not indicated on the form was that the Festival Theatre showed only X-rated movies.

In late April 1978, Liang's supervisor, William Cohen, learned that Liang intended to acquire a fifty percent interest in the theatre. Liang sought approval for this outside activity, as required by the Exchange Rules.

Soon thereafter, Cohen informed Liang that Shearson's Compliance Department had rejected his application for approval. Liang asked Cohen to seek reconsideration of the rejection. In a meeting on May 1, Cohen again told Liang that the application had been rejected. On May 3rd, Liang met with Cohen and Donald Law, a Shearson Compliance Officer. Liang was told that he had to disaffiliate himself from either the Festival Theatre or Shearson. Liang responded that he would not give up his outside activity. When he refused to resign, he was fired.

Immediately after Liang's termination, Shearson sent a letter to each of Liang's customers saying that Liang was no longer employed by Shearson. Liang, meanwhile, sought employment at Bache Halsey & Stuart and Dean Witter, two brokerage firms with reputations and facilities comparable to Shearson. Each firm was told by Liang the reason for his separation from Shearson. Each firm, after contacting Cohen at Shearson, declined to employ Liang.

Liang sought arbitration of his termination pursuant to his employment contract.[2] Liang submitted an earnings history from his securities business and claimed about $84,000 in damages. After a hearing, a panel of five arbitrators awarded Liang $50,000, without opinion.

After the arbitration, Shearson discovered that Liang had incorporated Liang Insurance Agency and Investments, Inc., an Illinois corporation, in October 1977. Liang had not disclosed this other outside affiliation to Shearson, although there was no evidence that the corporation was active.

Shearson filed this complaint to vacate the arbitrators' award. The district court granted Liang's motion for summary judgment, and Shearson appeals.

---

* At the time of oral argument, Judge Swygert was a circuit judge in active service; he assumed senior status on July 1, 1981.

** The Honorable Robert L. Kunzig, Judge of the United States Court of Claims, is sitting by designation.

1. Exchange Rule 346(b) provides in part:
   Without the prior consent of his member or member organization-employer, no member, allied member or employee of a member or member organization shall at any time be engaged in any other business; or be employed or compensated by any other person;
   or serve as an officer, director, partner or employee of any other business organization . . . ."

2. Liang's contract provided that:
   . . . I agree that any controversy between me and any member or member organization or affiliate or a subsidiary thereof arising out of my employment or the termination of my employment shall be settled by arbitration at the instance of any such party in accordance with the arbitration procedure prescribed in the Constitution and Rules then obtaining of the New York Stock Exchange, Inc.

Shearson urges first, that there was no evidence to support the arbitrators' award; second, that Liang's nondisclosure of his other company is fraud sufficient to vacate the award; and third, that the district court erred in treating Liang's motion to dismiss as one for summary judgment because Shearson's exhibits created a genuine issue of material fact.

## II

■ We can set aside an arbitration award only on the grounds set forth in section 10 of the Federal Arbitration Act, 9 U.S.C. § 10. *Tamari v. Bache Halsey Stuart Inc.*, 619 F.2d 1196, 1198 n.2 (7th Cir.), *cert. denied,* 449 U.S. 873, 101 S.Ct. 213, 66 L.Ed.2d 93 (1980). Lack of evidence to support the award is not among those grounds,[3] although some courts have suggested that an arbitral award may be set aside if it is "completely irrational." *See, e. g., Storer Broadcasting Co. v. American Federation of Television and Radio Artists,* 600 F.2d 45, 47 (6th Cir. 1979); *Swift Industries, Inc. v. Botany Industries, Inc.,* 466 F.2d 1125 (3d Cir. 1972). This Circuit has not decided the issue, *see National R.R. Passenger Corp. v. Chesapeake & Ohio Rwy.*, 551 F.2d 136, 142 (7th Cir. 1977), and we need not decide it now, for the evidence adduced here amply supports the arbitrators' award.

At the hearing, Liang and Cohen testified that Shearson knew Liang worked at an X-rated movie theatre when he was hired. Cohen also testified that neither he nor Liang's customers had any complaints about the way Liang handled his accounts.

There was evidence that Shearson did not automatically discharge an employee for violation of Rule 346, but that it depended on the nature of the outside affiliation. Liang testified that his ownership of the theatre would not conflict with his duties during trading hours, and this was not seriously contested by Shearson.[4] Rather, the evidence showed that Shearson rejected Liang's outside activity because it feared potential bad publicity if it became known that one of its representatives was part owner of an X-rated movie theatre.

■ The arbitrators gave no reasons for their award, but they are not required to do so. *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 598, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960); *Wilko v. Swan,* 346 U.S. 427, 436, 74 S.Ct. 182, 187, 98 L.Ed. 168 (1953). Shearson's argument that there was no evidence to support a finding that Liang did not breach his contract reduces to an assertion that the arbitrators reached the wrong result from conflicting evidence. We may not vacate the award on that ground. *United Steelworkers of America v. American Mfg. Co.,* 363 U.S. 564, 567–68, 80 S.Ct. 1343, 1346, 4 L.Ed.2d 1403 (1960).

Shearson's further reply that Liang's employment was terminable at will is without merit. It has been held repeatedly that an agreement to arbitrate disputes about employee discharges implies a requirement that discharges be only for "just cause."

---

**3.** 9 U.S.C. § 10 provides:

In either of the following cases the United States Court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—
(a) Where the award was procured by corruption, fraud or undue means.
(b) Where there was evident partiality or corruption in the arbitrators, or either of them.
(c) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any misbehavior by which

the rights of any party may have been prejudiced.
(d) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.
The Arbitration Act has been "absorbed" as part of the federal law of arbitration under section 301 of the National Labor Relations Act. *Pietro Scalzitti Co. v. Operating Engineers Local No. 150,* 351 F.2d 576, 580 (7th Cir. 1965).

**4.** Liang admitted that he wanted to take four days off to work on theatre business. He also testified that he had not taken a vacation in a year and a half.

*See, e. g., Int'l. Ass'n. of Machinists v. Campbell Soup Co.*, 406 F.2d 1223, 1226–27 (7th Cir.), *cert. denied*, 396 U.S. 820, 90 S.Ct. 57, 24 L.Ed.2d 70 (1969). Since the arbitrators had power under the contract to make that determination, their award must be upheld. *Amoco Oil Co. v. Oil, Chemical & Atomic Workers Int'l. Union*, 548 F.2d 1288, 1294 (7th Cir.), *cert. denied*, 431 U.S. 905, 97 S.Ct. 1697, 52 L.Ed.2d 389 (1977).

### III

The district court ruled that Shearson's discovery of Liang's other outside affiliation did not warrant vacating the award. It reasoned, first, that Shearson did not show that it could not have discovered the evidence prior to the arbitration; second, that even if it had discovered it prior to arbitration, the evidence would not have been admissible to bolster Shearson's decision to fire Liang. We agree.

■■ The Arbitration Act does not allow vacation of an award for new evidence. *Washington-Baltimore Newspaper Guild v. Washington Post Co.*, 442 F.2d 1234, 1238 (D.C. Cir. 1971). Nor have we found any case explicitly holding that new evidence or nondisclosure of evidence constitutes "fraud" under section 10, as appellant suggests. But even in those few cases involving nondisclosure of evidence or perjury, courts have recognized the applicability of the due diligence requirement. *Karppinen v. Karl Keifer Machine Co.*, 187 F.2d 32, 35 (2d Cir. 1951); *see Biotronik v. Medford Medical Instrument Co.*, 415 F.Supp. 133, 138–39 n.15 (D.N.J.1976). The district court's ruling that Shearson had not met the due diligence requirement was not clearly erroneous.

■■ We are less certain of the district court's conclusion that the arbitrator would not have admitted the evidence of Liang's other affiliation had it been timely discovered. Arbitrations are not governed by the rules of evidence. We agree, nevertheless, that the evidence does not justify vacating the award even if admissible. The arbitration concerned only Liang's discharge for his affiliation with the Festival Theatre.

Whether Shearson may now have "sufficient evidence to justify a discharge of [Liang] for cause if he were now in the employer's employ is irrelevant to the issues the arbitrator heard and has no bearing upon the arbitrator's determination that the employer did not have just cause to discharge him" in 1978. *Bridgeport Rolling Mills Co. v. Brown*, 314 F.2d 885, 886 (2d Cir.), *cert. denied*, 375 U.S. 821, 84 S.Ct. 58, 11 L.Ed.2d 55 (1963). Therefore, even if the evidence were admitted, it would have been relevant only to Liang's credibility. Failure to consider credibility evidence is not a ground for vacation of an award. *Karppinen v. Karl Keifer Machine Co.*, 187 F.2d at 35; *Newark Stereotypers' Union No. 18 v. Newark Morning Ledger Co.*, 397 F.2d 594, 598–99 (3d Cir.), *cert. denied*, 393 U.S. 954, 89 S.Ct. 378, 21 L.Ed.2d 365 (1968).

### IV

■ Finally, we reject Shearson's contention that the district court improperly construed Liang's motion to dismiss as one for summary judgment. The district court may properly construe a motion to dismiss as one for summary judgment when it is accompanied by documents. F.R.C.P. 12(b). Neither Shearson's brief here nor its submissions to the district court discloses any material fact about which it believes there is a dispute. Summary judgment was, therefore, properly entered against it.

The decision of the district court is

Affirmed.