**DEAN FOODS COMPANY, Plaintiff,**

v.

**UNITED STEELWORKERS OF AMERICA and its Local Union 5840, Defendants.**

**No. 3:94cv1059 AS.**

United States District Court,
N.D. Indiana,
South Bend Division.

Dec. 29, 1995.

Janilyn S. Brouwer, Barnes and Thornburg, South Bend, IN, Herbert C. Snyder, Jr., Barnes and Thornburg, Fort Wayne, IN, Charles S. Mishkind, Miller, Canfield, Paddock, and Stone, Grand Rapids, MI, for plaintiff.

Richard J. Swanson, Macey, Macey and Swanson, Indianapolis, IN, for defendants.

### *MEMORANDUM AND ORDER*

ALLEN SHARP, Chief Judge.

Plaintiff Dean Foods Company ("Dean Foods" or "the Company") filed this action to set-aside, vacate, or modify an arbitration award rendered in favor of its discharged

employee Rocky Bachman ("the grievant"), a member of the collective bargaining unit represented by the defendant Union. Defendant United Steelworkers of America ("USWA") and its Local Union 5840 thereafter filed a counterclaim seeking enforcement of the arbitrator's award, including reinstatement and back pay for time lost, together with costs and reasonable attorney's fees. This court has jurisdiction over the action pursuant to Section 301(a) of the Labor–Management Relations Act of 1947 ("the Act"), which confers federal jurisdiction over contractual disputes arising out of collective bargaining on the district courts. *See* 29 U.S.C. § 185(a) (1994).

## BACKGROUND

### I.

The grievant, Rocky Bachman, was a union leadperson at Dean Foods who had responsibilities both the Company and the Union describe as primarily supervisory, nonphysical, light-duty work. Although Bachman apparently had a history of problems with absenteeism at Dean Foods, he began with a clean attendance record when the Company implemented a new "no-fault" point system attendance policy on March 1, 1993. By August of that year, however, Bachman had received a final warning that he was on the verge of discharge under the new point system. On August 16, 1993, he submitted a nonspecific doctor's slip (stating simply that he was to be off work for a week) to his immediate supervisor. The plaintiff contends that in order for the grievant's absence to be excused under the new attendance policy,[1] Bachman was required to prove that his

absence was related to a "continued medical condition." He provided no such documentation at that time. After he failed to report for work the following day, the plant manager telephoned Bachman's home, only to be told that the grievant was unavailable because he was working on a job for his own concrete business. When the plant manager reached Bachman later that day, he instructed the grievant to report to the plant on August 19, his next scheduled workday. Upon Bachman's arrival at the plant, the plant manager discharged him for exceeding the maximum number of points allowed under the Company's new point system.

### II.

When the dispute over Bachman's discharge could not be resolved through the parties' negotiated grievance procedure, the parties voluntarily submitted the case to binding arbitration pursuant to the collective bargaining agreement between Dean Foods and USWA.[2] At the arbitration hearing on April 27, 1994, the grievant claimed that his terminating absences should have been excused due a continuing knee problem.[3] Dean Foods, on the other hand, claims to have had no prior knowledge of Bachman's knee problem, either before he reached the brink of discharge or at the time of his final absence. The Company was not represented by counsel at the arbitration hearing and now complains that it was taken by surprise regarding the grievant's assertion that he had been unable to work on August 16 and 17 due to a continuing knee problem. When the arbitrator issued his written Opinion and Award on September 21, 1994, nearly five months after

---

1. Notwithstanding the plaintiff's contention that its "no-fault" attendance policy is designed to relieve the Company of case-by-case review of the underlying reasons for employee absences, Plaintiff's Brief at 11, the Company's attendance policy is *not* a pure "no-fault" policy, which by definition makes no distinction between excused and unexcused absences. As the arbitrator correctly determined, an attendance policy which provides exceptions to the no-fault plan (such as Dean Foods' plan), whereby no "points" are assessed against the employee for certain types of absences, is commonly referred to as a "modified" no-fault program.

2. Article XI, Section 8 of the collective bargaining agreement states: "If the grievance is not settled satisfactorily at this point, it then may be submitted, within fifteen (15) days of the decision, provided from the meeting in Section 7, to arbitration by the Federal Conciliation and Mediation Services."

3. The Company's Attendance Policy provides that certain types of absences "are excused and will not count toward perfect attendance or days absent." Specifically, the seventh listed type of excused absence refers to "Absences related to a continued medical condition." The provision notes parenthetically that such absences "must be documented."

the hearing, the arbitrator held Dean Foods responsible for failing to uncover the grievant's claim of a continuing medical problem, and conditionally required the Company to reinstate Bachman, with full seniority restored and all benefits, including medical benefits, but without back pay for the periods when he was not medically fit to work. The arbitrator conditioned the grievant's reinstatement on his ability to establish that he was medically fit to resume his former job or a substantially equivalent position. The arbitrator retained jurisdiction for an additional ninety days solely for purposes of interpretation and application of the remedy portion of the award.

The parties requested additional hearing dates to resolve various issues they believed had been left open, and the arbitrator scheduled a second day of hearings for February 17, 1995. At the second arbitration hearing, plaintiff Dean Foods began by introducing evidence regarding the grievant's lack of a "continued medical condition." However, before the Company could receive a "full and fair" hearing on the allegedly fraudulent conduct of the grievant, the arbitrator—upon motion of the defendant—chose to limit the presentation of testimony and evidence solely to issues related to the back pay remedy and declared himself *functus officio* as to the merits of the case. At the close of the second arbitration hearing, the arbitrator required Dean Foods to reinstate the grievant within five days (the parties having stipulated to the medical predicate at the second arbitration hearing), but postponed ruling on the remaining remedy issues until Dean Foods submitted a supplemental complaint. Ultimately, the arbitrator awarded Bachman back pay not to be offset by the grievant's outside interim earnings from his concrete business. Dean Foods "reinstated" Bachman on March 6, 1995, but terminated his employment the following day for his alleged dishonesty during the first arbitration hearing.

In order to preserve its rights, the plaintiff filed its complaint in this court on December 28, 1994, prior to the second day of hearings before the arbitrator. Following the arbitrator's disposition of the case, the plaintiff filed its motion to vacate, set-aside, or modify the arbitration award on August 7, 1995. The defendant simultaneously moved for summary judgment. Thereafter, the plaintiff filed a supplemental complaint, and on August 14, 1995, the Union filed its answer and supplemental counterclaim to enforce the arbitration award. The plaintiff filed its cross-motion for summary judgment on September 13, 1995. The court heard oral arguments on October 20, 1995, and now rules in this cause of action.

### Summary Judgment Standard

Summary judgment is proper if the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there exists no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *Russo v. Health, Welfare & Pension Fund, Local 705*, 984 F.2d 762 (7th Cir.1993). A thorough discussion of Rule 56 can be found in a trilogy of cases decided in 1986 by the Supreme Court of the United States. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). *Celotex* addressed the initial burdens of the parties under Rule 56, and *Anderson* addressed the standards under which the record is to be analyzed within the structure of Rule 56.

The initial burden is on the moving party to demonstrate, "with or without supporting affidavits," the absence of a genuine issue of material fact and that judgment as a matter of law should be granted in the moving party's favor. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553 (quoting Fed.R.Civ.P. 56). A question of material fact is a question which will be outcome determinative of an issue in the case. The Supreme Court has instructed that the facts material in a specific case shall be determined by the substantive law controlling the given case or issue. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. Once the moving party has met the initial burden, the opposing party must "go beyond the pleadings" and "designate 'specific facts

shows that there is a genuine [material] issue for trial.'" *Id.* The nonmoving party cannot rest on its pleadings, *Waldridge v. American Hoechst Corp.,* 24 F.3d 918, 920–21 (7th Cir. 1994); *Hughes v. Joliet Correctional Ctr.,* 931 F.2d 425, 428 (7th Cir.1991), nor may that party rely upon conclusory allegations in affidavits. *Cusson–Cobb v. O'Lessker,* 953 F.2d 1079, 1081 (7th Cir.1992).

■ During its summary judgment analysis, the court must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Smith v. Fruin,* 28 F.3d 646, 650 (7th Cir. 1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 735, 130 L.Ed.2d 638 (1995); *Brennan v. Daley,* 929 F.2d 346, 348 (7th Cir.1991). Furthermore, it is required to analyze summary judgment motions under the standard of proof relevant to the case or issue. *Anderson,* 477 U.S. at 252–55, 106 S.Ct. at 2512–14.

The 1986 Supreme Court trilogy was later reexamined in *Eastman Kodak v. Image Technical Serv.,* 504 U.S. 451, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992), a case born in the context of antitrust law. The most that can be said for *Eastman Kodak,* however, is that it did not tinker with *Celotex* and *Anderson,* and possibly involves an attempt to clarify *Matsushita.* This view is well-supported by an in-depth academic analysis in Schwarzer, Hirsch, and Barrans, *The Analysis and Decision of Summary Judgment Motions,* 139 F.R.D. 441 (1992).

■ Where, as here, cross-motions for summary judgment have been submitted by the parties, the court is not required to grant judgment as a matter of law for one side or the other. *Heublein, Inc. v. United States,* 996 F.2d 1455, 1461 (2d Cir.1993); *Judsen Rubber Works, Inc. v. Manufacturing, Prod. & Serv. Workers Union Local No. 24,* 889 F.Supp. 1057, 1060 (N.D.Ill.1995). Rather, the court must evaluate each party's motion on its own merits, resolving factual uncertainties and drawing all reasonable inferences against the party whose motion is under consideration. *Heublein,* 996 F.2d at 1461; *Judsen,* 889 F.Supp. at 1060; *Buttitta v. City of Chicago,* 803 F.Supp. 213, 217 (N.D.Ill.1992), *aff'd,* 9 F.3d 1198 (7th Cir. 1993).

## DISCUSSION

Dean Foods argues that the arbitrator's award should be set-aside, vacated, or modified for the following reasons: the arbitrator erred by allowing the grievant to fraudulently (and by undue means) assert an excused absence exception to the Company's no-fault plan; the arbitrator's award fails to draw its essence from the collective bargaining agreement; the arbitrator erred in ruling that he was *functus officio* as to the merits of the case at the second arbitration hearing; and the arbitrator's untimely awards prejudiced the Company. The defendant, as might be expected, contends that the arbitrator merely interpreted contract language in determining the grievant's award. Specifically, the Union argues that the arbitrator properly placed the burden on the Company to investigate the grievant's medical condition after the grievant submitted the ambiguous excuse; that the arbitrator's bifurcation of the merits and remedy phases was not a violation of the *functus officio* doctrine; that the Company had no cause to claim surprise at the first arbitration hearing, since the excuse of a "continued medical condition" was first raised during the grievance procedure; and that, even assuming the Company *was* surprised, nothing prevented the Company from requesting a continuance at the arbitration hearing. Accordingly, USWA asserts that the arbitrator's award should be enforced. Additionally, the Union contends that because the plaintiff's complaint was frivolous, attorneys' fees should be assessed and prejudgment interest awarded.

■ It is well established that a court's review of a labor arbitration award by an arbitrator appointed pursuant to a collective bargaining agreement is extremely limited. *See United Paperworkers Int'l Union v. Misco, Inc.,* 484 U.S. 29, 37–38, 108 S.Ct. 364, 370–71, 98 L.Ed.2d 286 (1987); *W.R. Grace & Co. v. Local 759, Int'l Union of United Rubber Workers,* 461 U.S. 757, 764, 103 S.Ct. 2177, 2182, 76 L.Ed.2d 298 (1983); *United Steelworkers of Am. v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 596, 598–99, 80 S.Ct.

1358, 1360, 1361–62, 4 L.Ed.2d 1424 (1960); *Sullivan v. Lemoncello,* 36 F.3d 676, 683 (7th Cir.1994). Judicial review of such awards is narrow because arbitration is intended to be the final resolution of labor disputes—broad judicial review of arbitrators' decisions would render such decisions practically meaningless, as they would almost never be considered final. *See Enterprise Wheel,* 363 U.S. at 596, 80 S.Ct. at 1360. Were it otherwise, the congressional objective of settling labor-management disputes by arbitrators expert in industrial practices and customs would be undermined. *Id.* Therefore, so long as an arbitrator's award draws its essence from the collective bargaining agreement, a court may not vacate the award even if it finds that the basis for the award is ambiguous, or disagrees with the arbitrator's conclusions under the law. *Id.* at 597–98, 80 S.Ct. at 1361–62; *National Wrecking Co. v. International Bhd. of Teamsters, Local 731,* 990 F.2d 957, 960 (7th Cir.1993) ("We will not set aside an arbitrator's award for factual or legal errors, as long as the award contains the honest decision of the arbitrator after a full and fair hearing of the parties.").

▮▮▮▮ Nevertheless, there are exceptional situations where courts may review the merits of labor arbitration awards. In addition to the situation where an arbitrator's award cannot rationally be derived from the collective bargaining agreement, it is fair to assume that, even under the limited scope of review applicable to labor arbitration decisions, a court would be justified in vacating an arbitrator's award where corruption (*e.g.,* bribery or fraud) had influenced the arbitrator's decision. *See Enterprise Wheel,* 363 U.S. at 597, 80 S.Ct. at 1361; *American Postal Workers Union, AFL–CIO v. United States Postal Service,* 52 F.3d 359, 362 (D.C.Cir.1995). A court also would be justified, under relatively narrow circumstances, in vacating an arbitrator's award where the award is contrary to public policy—a specific application of the more general doctrine that courts may refuse to enforce contracts which are contrary to law or public policy. *See W.R. Grace,* 461 U.S. at 766, 103 S.Ct. at 2183. However, this exception does not authorize courts to vacate arbitration awards based on " 'general considerations of supposed public interests.' " *Misco,* 484 U.S. at 43, 108 S.Ct. at 373 (quoting *W.R. Grace,* 461 U.S. at 766, 103 S.Ct. at 2183). Rather, courts may vacate labor arbitration awards under the "public policy exception" only when they explicitly conflict with well-defined, dominant public policy ascertainable from law and legal precedent. *Id.*

Here, the Company does not specifically allege that the arbitrator's award violates public policy, but rather argues that the award should be vacated because the grievant procured the award through fraud and undue means. In support of its argument that this court must not allow the arbitrator's award to stand, the plaintiff quotes the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.,* which states that a court "may make an order vacating the award upon the application of any party to the arbitration ... [w]here the award was procured by corruption, fraud, or undue means." 9 U.S.C. § 10(a)(1) (1994). Although the Federal Arbitration Act applies to arbitration awards involving interstate commerce or admiralty rather than to labor arbitration awards, the Seventh Circuit has acknowledged its usefulness in labor arbitration cases. In *Glass, Molders, Pottery, Plastics & Allied Workers Int'l Union, Local 182B v. Excelsior Foundry Co.,* 56 F.3d 844 (7th Cir.1995), the Seventh Circuit noted that "[t]he Federal Arbitration Act, 9 U.S.C. § 1 *et seq.,* ... which although formally inapplicable to labor arbitration[,] is used as a source of principles to guide the formulation of a federal common law of labor arbitration under section 301." 56 F.3d at 848; *see also Misco,* 484 U.S. at 40 n. 9, 108 S.Ct. at 372 n. 9.

▮▮▮▮ Under the Federal Arbitration Act, a party seeking to vacate the arbitrator's award on the ground that the award was procured through fraud must demonstrate that the conduct was (1) not discoverable by due diligence before or during the arbitration hearing; (2) materially related to an issue in the arbitration; and (3) established by clear and convincing evidence. *See Gingiss Int'l, Inc. v. Bormet,* 58 F.3d 328, 333 (7th Cir.1995); *Pacific & Arctic Railway & Navigation Co. v. United Transportation*

*Union,* 952 F.2d 1144, 1148 (9th Cir.1991); *O.R. Securities, Inc. v. Professional Planning Assocs., Inc.,* 857 F.2d 742, 748 (11th Cir.1988); *Bonar v. Dean Witter Reynolds, Inc.,* 835 F.2d 1378, 1383 (11th Cir.1988). However, the Act does not provide for vacatur in the event of any fraudulent activity; rather, it requires a nexus between the alleged fraud and the basis for the arbitration award. *Forsythe Int'l, S.A. v. Gibbs Oil Co. of Texas,* 915 F.2d 1017, 1022 (5th Cir.1990); *cf. Bonar,* 835 F.2d at 1383; *Dogherra v. Safeway Stores, Inc.,* 679 F.2d 1293, 1297 (9th Cir.) ("[I]n order to protect the finality of arbitration decisions, courts must be slow to vacate an arbitral award on the ground of fraud."), *cert. denied,* 459 U.S. 990, 103 S.Ct. 346, 74 L.Ed.2d 386 (1982). The courts have held that the test for "fraud" in reviewing an arbitration award is the common law definition as modified by the Arbitration Act—*i.e.,* a greater level of improper conduct must be shown because of the limited power of judicial review of arbitration awards. *See, e.g., Pacific & Arctic Railway,* 952 F.2d at 1148.

■■■ The Company contends that, because the grievant never mentioned prior to the arbitration hearing that his terminating absences had been caused by a knee injury (and purportedly was working on a job for his own concrete business at the time of his final absences), the grievant engaged in "openly fraudulent activity" by asserting his self-serving excuse of a "continued medical condition" at the hearing. While it is true that "[o]btaining an award by perjured testimony constitutes fraud," *Dogherra,* 679 F.2d at 1297; *see Shearson Hayden Stone, Inc. v. Liang,* 653 F.2d 310, 313 (7th Cir.1981), a plaintiff cannot successfully make out a *prima facie* claim of fraud if the fraud was discoverable upon the exercise of due diligence prior to or *during* the arbitration. The record in the present cause indicates that, even absent representation of counsel at the arbitration hearing, the Company adequately expressed its beliefs and opinions as to the grievant's belated assertion of a continued medical condition:

I recognize that the Employer asserts that the knee problems were resolved in August, *1991,* two years before he was fired, and likely had nothing to do with the absences on August 17, 1993. In fact, the Employer "postulates" that the evidence that Grievant was at work in his concrete business on August 17, 1993 is the best evidence that Grievant's claim of an excused absence and of a later substantial and permanent physical limitation was a pretext, false and an after-the-fact excuse. The Company also has strongly asserted that the later medical procedures involving Grievant's knee are irrelevant because they were "after-the-fact," and the initial medical excuse by Dr. Hoff given to the Company on August 16 was not specific enough to show that absence was connected to Grievant's knee problems, as noted above.

Opinion and Award (Sept. 21, 1994) at 24. The requisite nexus between the alleged fraud and the basis for the arbitration award may exist where the fraudulent conduct prevents the arbitrator from considering a significant issue to which he does not otherwise have access, but where an arbitrator hears the plaintiff's allegation of fraud and then proceeds to base his decision on grounds clearly independent of issues connected to the alleged fraud, the Federal Arbitration Act offers the plaintiff no basis for vacatur. *Forsythe,* 915 F.2d at 1022.

■■ As with allegations of "fraud," the plaintiff who alleges that an arbitration award was procured through "undue means" must demonstrate that the conduct was (1) not discoverable by due diligence before or during the arbitration hearing; (2) materially related to an issue in the arbitration; and (3) established by clear and convincing evidence. *Gingiss,* 58 F.3d at 333. And, as with the definition of fraud under the Arbitration Act, the term "undue means" connotes some type of bad faith in the procurement of the award. *See Shearson Hayden Stone, Inc. v. Liang,* 493 F.Supp. 104, 108 (N.D.Ill.1980), *aff'd,* 653 F.2d 310 (7th Cir.1981). The Company's difficulty, however, is that even under the Federal Arbitration Act, no court has ever suggested that the term "undue means" should be interpreted to apply to the submission of evidence that is merely legally objectionable. *See United States Postal Service,* 52 F.3d at

362; *A.G. Edwards & Sons, Inc. v. McCollough,* 967 F.2d 1401, 1403–04 (9th Cir.1992), *cert. denied,* 506 U.S. 1050, 113 S.Ct. 970, 122 L.Ed.2d 126 (1993); *Remmey v. Paine-Webber, Inc.,* 32 F.3d 143, 148 (4th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 903, 130 L.Ed.2d 786 (1995). The level of improper conduct envisioned by the Act far surpasses that alleged by the Company in the present case. Therefore, even under the language of the Federal Arbitration Act, the plaintiff's argument that this court must vacate the arbitration award because the grievant procured the award through fraud and undue means is untenable.

▉ Even if the plaintiff intended that the court fit the arbitrator's award into the public policy exception rather than basing its review solely on allegations of fraud and undue means, the plaintiff fares no better under that theory. When an arbitration award is challenged under the public policy exception, the reviewing court first must determine whether the arbitrator's interpretation of the contract language jeopardizes a "well-defined and dominant public policy," taking the facts as found by the arbitrator. *Chrysler Motors Corp. v. International Union, Allied Indus. Workers of Am.,* 748 F.Supp. 1352, 1359 (E.D.Wis.1990). The party seeking to have the award vacated then must show a sufficient link between enforcement of the award and violation of the policy in question to warrant the court's refusal to confirm the arbitrator's award. *Id.* Under the circumstances present here, an award which conditionally reinstates and awards back pay and benefits to an employee accused of absenteeism, following a determination that the absences were excused under the arbitrator's interpretation of the relevant contract language, does not violate public policy. As the Supreme Court of the United States has made clear, to overturn a labor arbitration award as contrary to public policy is a daunting task indeed. *See W.R. Grace,* 461 U.S. at 766, 103 S.Ct. at 2183. In the present cause, that task is insurmountable.

▉ The Company next complains that the arbitrator's award fails to draw its essence from the collective bargaining agreement. Specifically, the plaintiff argues that the arbitrator exceeded his powers by (1) improperly placing the burden of discovering the grievant's medical condition on the Company; (2) focusing on the phrases "full compensation" and "for time lost" to the exclusion of all other qualifying language negotiated into Article XVIII of the collective bargaining agreement; and (3) ignoring precedent and improperly interpreting the collective bargaining agreement to dispense with ordinary mitigation of damages principles.

In *United Steelworkers of Am. v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960), the Supreme Court of the United States set forth the standard for judicial review of arbitration awards in one of a trilogy of labor arbitration cases decided the same day. The Court's language—that an arbitrator's award is valid only if it "draws its essence from the collective bargaining agreement"—was intended to ensure the arbitrator his customary deference. *See Enterprise Wheel,* 363 U.S. at 597, 80 S.Ct. at 1361. The problem with the Court's formulation, of course, is that too often it invites courts to set aside arbitration awards when judges are unable to find a specific basis for an award in a particular provision of a contract. *See Ethyl Corp. v. United Steelworkers of Am.,* 768 F.2d 180, 184 (7th Cir.1985) (emphasis in original), *cert. denied,* 475 U.S. 1010, 106 S.Ct. 1184, 89 L.Ed.2d 300 (1986). However, the language surrounding this wording makes clear that what the Court meant is that an arbitration award is valid so long as it constitutes an attempt to interpret the collective bargaining agreement rather than to apply the arbitrator's own notions of right and wrong. Thus, as the Seventh Circuit has noted, the circumstances in which an arbitrator can be said to have gone beyond the essence of the contract are very narrow indeed:

> Whenever an arbitrator misreads a contract, it is possible to say that his award fails to draw its essence from the contract; that the ground of the award is not the contract but the arbitrator's misreading. But so long as the award is based on the arbitrator's interpretation—unsound though it may be—of the contract, it draws its essence from the contract. . . .

It is only when the arbitrator *must* have based his award on some body of thought, or feeling, or policy, or law that is outside the contract (and not incorporated in it by reference, either, see *Jones Dairy Farm v. Local No. P–1236, United Food Workers,* 760 F.2d 173, 176 (7th Cir.1985)) that the award can be said not to "draw its essence from the collective bargaining agreement"....

*Ethyl,* 768 F.2d at 184–85.

Any reasonable doubt whether the arbitrator "has interpreted the contract or relied on some private notion of equity ... must be resolved in favor of enforcing the award." *Id.* at 185.

In light of the standard applicable to arbitration decisions, two of the Company's arguments under this theory—that the arbitrator erred by focusing on the phrases "full compensation" and "for time lost" to the exclusion of all other qualifying language negotiated into Article XVIII of the collective bargaining agreement, and that he improperly interpreted the collective bargaining agreement to dispense with ordinary mitigation of damages principles—clearly must fail. The arbitration system is premised on the idea that parties to collective bargaining contracts should not be able to gain judicial reversal of arbitration decisions simply because they disagree with the arbitrator's interpretation of contract language. The plaintiff's arguments here amount to nothing more than saying that the arbitrator was wrong—maybe even *clearly* wrong—in his determination that, under the collective bargaining agreement, the grievant must be fully compensated for wages and benefits not reduced by outside earnings. The Company has not shown that the arbitrator did something other than interpret the labor agreement. On the contrary, the arbitrator applied a traditional principle of contract interpretation—that, in the absence of anything indicating that the words of a contract are intended to have a technical or special meaning, the words should be given their ordinary and popularly accepted meaning. The arbitrator's interpretation of the manner in which wrongfully discharged employees are to be compensated

under the labor contract is an entirely plausible reading which this court will not disturb.

▮▮▮ The Company's third argument under its theory that the award fails to draw its essence from the collective bargaining agreement—that the arbitrator erred by placing the burden on the Company to discover the grounds for the grievant's terminating absence—while arguably correct under the plain language of the attendance policy, must fail as well in light of the arbitrator's interpretation of the collective bargaining agreement. The Company's attendance program does state parenthetically that excuses submitted under the exception for absences related to a continued medical condition "must be documented" (which the grievant clearly failed to do); nevertheless, the arbitrator is entitled to interpret the collective bargaining agreement as placing the burden on the Company to investigate the medical condition of the grievant before firing him. Certainly, "because contracts have both implied and express terms, the authority of an arbitrator to interpret a contract includes the power to 'discover' implied terms." *Ethyl Corp. v. United Steelworkers of Am.,* 768 F.2d 180, 186 (7th Cir.1985), *cert. denied,* 475 U.S. 1010, 106 S.Ct. 1184, 89 L.Ed.2d 300 (1986).

▮▮▮ This is not to say that an arbitrator, by simply cloaking his decision in the guise of contract interpretation, can shield from judicial intervention an award in which the arbitrator has failed to confine himself to the terms of the collective bargaining agreement. For example, in *Young Radiator Co. v. International Union, U.A.W.,* 734 F.2d 321 (7th Cir.1984), the Seventh Circuit found that the arbitrator's only stated reason for his decision to reinstate a discharged employee was based on a notion clearly introduced by the arbitrator. By doing so, the arbitrator hampered the employer's right to discharge an employee for theft, a right explicitly established by the collective bargaining agreement. 734 F.2d at 324–25. Thus, the court concluded that the arbitrator's award was improperly granted. *Id.* at 325. Also, in *Miller Brewing v. Brewery Workers Local Union No. 9,* 739 F.2d 1159 (7th Cir.1984), *cert. denied,* 469 U.S. 1160, 105 S.Ct. 912, 83 L.Ed.2d 926 (1985), the court of appeals

struck down a remedy in which the arbitrator ordered the company to give a hiring preference to another company's former employee, a worker who had an unsatisfactory work record. While the bargaining agreement implicitly authorized the arbitrator to order the company to hire a worker who, by virtue of a hiring preference, was entitled to be hired to fill a vacancy, the court of appeals concluded that it was not at all plausible to suppose that the remedy the arbitrator devised was within the contemplation of the parties when the collective bargaining agreement was negotiated. 739 F.2d at 1164. The present case, however, is not one in which the arbitrator's words manifest an infidelity to his obligation to have his award draw its essence from the bargaining agreement; nor can it be said that in crafting his award, the arbitrator "dispense[d] his own brand of industrial justice." *See Enterprise Wheel,* 363 U.S. at 597, 80 S.Ct. at 1361. Here, the arbitrator—wrong though he may be—interpreted the express language of the contract and applied traditional techniques of contract interpretation to discover the contract's implied terms. Thus, this court finds that the present action is covered by the Seventh Circuit's observation in the *Ethyl* case:

> [W]e take seriously the twin propositions that (1) the reviewing court's function ... is at an end when it concludes that what the arbitrator did was interpretation of the contract, and (2) when in doubt the court must find that it was interpretation. We do not want to be plagued by cases in which companies or unions refuse to comply with arbitration awards merely because they think the arbitrator clearly misinterpreted the collective bargaining agreement. If parties to collective bargaining contracts are unhappy with arbitration awards they can bargain for a different method of selecting arbitrators, or for panels of arbitrators, trial or appellate.

*Ethyl,* 768 F.2d at 187.

■ The Company next alleges that it was denied a full and fair hearing on the merits of the case when the arbitrator improperly declared himself *functus officio* at the second arbitration hearing. Specifically, the plaintiff takes issue with the arbitrator's decision to bifurcate the merits and remedy phases, since the Company believes that the arguments it attempted to make at the second arbitration hearing were relevant to the arbitrator's remedy.

■ The *functus officio* doctrine holds that "after a final decision by an arbitrator, the arbitrator becomes *functus officio* and lacks the power to reconsider or amend the decision." *Anderson v. Norfolk & Western Ry. Co.,* 773 F.2d 880, 883 (7th Cir.1985) (quoting *A/S Siljestad v. Hideca Trading, Inc.,* 541 F.Supp. 58, 61 (S.D.N.Y.1981), *aff'd,* 678 F.2d 391 (2d Cir.1982) (per curiam)). The Seventh Circuit recently noted, however, that the *functus officio* doctrine "is hanging on by its fingernails and whether it can even be said to exist in labor arbitration is uncertain." *Glass, Molders, Pottery, Plastics & Allied Workers Int'l Union, Local 182B v. Excelsior Foundry Co.,* 56 F.3d 844, 846 (7th Cir.1995); *see also Newman v. Corrado,* 897 F.2d 1579, 1583 (Fed.Cir.1990); *Red Star Express Lines v. International Bhd. of Teamsters,* 809 F.2d 103, 106 (1st Cir.1987); *id* at 108 (concurring opinion); *Local P–9 v. George A. Hormel & Co.,* 776 F.2d 1393, 1394 n. 1 (8th Cir.1985); *United Steelworkers of Am. v. Ideal Cement Co.,* 762 F.2d 837, 841 n. 3 (10th Cir.1985); *Industrial Mutual Ass'n, Inc. v. Amalgamated Workers,* 725 F.2d 406, 412 n. 3 (6th Cir.1984). Nevertheless, despite its "profound skepticism," the Seventh Circuit refused to abrogate the doctrine in *Excelsior Foundry,* 56 F.3d at 847–48.

Both *Excelsior Foundry* and the present case fall within the so-called "clarification-completion" exception to the *functus officio* doctrine. In *Excelsior Foundry,* the Seventh Circuit rejected the company's argument that clarification of an award was forbidden by the doctrine after the arbitrator issued his opinion and award. 56 F.3d at 848. Similarly, in the present case, the Company argues that the doctrine prohibited the arbitrator from maintaining jurisdiction over one portion of an arbitration (to the exclusion of another) to ensure completion of the remedy portion of the award. As with *Excelsior Foundry,* this argument offers no refuge to the Company. There is a wealth of case law,

both in this circuit and in others, recognizing the propriety of an arbitrator retaining jurisdiction over the remedy portion of an award. *See, e.g., Dreis & Krump Mfg. v. International Ass'n of Machinists & Aerospace Workers, Dist. No. 8,* 802 F.2d 247, 250 (7th Cir.1986); *see also Department of the Navy v. Federal Labor Relations Auth.,* 815 F.2d 797, 802 (1st Cir.1987); *Engis Corp. v. Engis Ltd.,* 800 F.Supp. 627 (N.D.Ill.1992); *Robert E. Derecktor of Rhode Island, Inc. v. United Steelworkers of America, Local 9057,* No. 89–0439B, 1990 WL 82813, at \*4 (D.R.I. June 5, 1990).

In *Dreis,* the Seventh Circuit observed in dictum that "the premise that the arbitrator could by retaining jurisdiction act on requests for reconsideration is not secure, especially where as in the present case the arbitrator retained jurisdiction for the limited purpose of supervising relief—not of entertaining requests to consider his determination of liability." 802 F.2d at 250. So it is with the present case. In his Opinion and Award, issued on September 21, 1994, the arbitrator adopted the following provision: "(3) Jurisdiction is retained for 90 days relating solely to the interpretation and application of the remedy portion of this Award." Opinion and Award (Sept. 21, 1994) at 30. Thus, the Company had notice well in advance of the second arbitration hearing that the arbitrator would not hear argument on the merits of the case. Although "[a]n arbitrator's authority or jurisdiction is confined to the power conferred upon him by the parties through mutual consent," *Philadelphia Newspapers, Inc. v. Newspaper Guild of Greater Philadelphia, Local 10,* No. 86–6192, 1987 WL 17744, at \*3 (E.D.Pa.1987), in light of the provision in the Opinion and Award, the Company scarcely can say, let alone argue, that it did not consent to the arbitrator's retention of limited jurisdiction. Since the record betrays no attempt by the Company to alter the foregoing provision, the plaintiff may be said to have acquiesced in the arbitrator's authority to retain limited jurisdiction over the case.

■ Finally, the plaintiff contends that the arbitrator's untimely award should be vacated because the Company was preju-

diced by the arbitrator's unreasonable delays and behavior. In the plaintiff's view, the nearly five-month delay between the first arbitration hearing and the arbitrator's issuance of his Opinion and Award amounts to a gross abuse of the privilege of additional time conferred on the arbitrator by the parties. Moreover, the Company maintains that the arbitrator's "unreasonable delays" in releasing his remedy award "[i]n a case involving a potentially significant back pay award ... were clearly prejudicial to Plaintiff." Plaintiff's Memorandum at 24. In essence, the Company claims that the arbitrator promised to issue his remedy award by no later than July 1, 1995, but then delayed releasing his award until July 14, 1995, in retaliation for the Company pursuing its legal remedy in this court.

■ First, the plaintiff offers no evidence that the arbitrator's delays violate applicable law. Second, it should always be within a court's discretion to uphold a "late" award if no objection to the delay has been made prior to the rendition of the award. Since it appears that no such objection was made in this case, the court certainly has the discretion to uphold the arbitrator's award. Third, an award should not be vacated where there is no showing that actual harm to the losing party was caused by the delay. Argument is not evidence, and this court will not invalidate an award absent a clear showing of actual harm. Each of these considerations counsels strongly against vacating the arbitrator's award on this basis.

■ The Union contends that because the plaintiff has refused to abide by the arbitrator's awards, prejudgment interest should be awarded on back pay, sick pay, and COBRA amounts due. Awarding prejudgment interest in a § 301 action is within the discretion of the district court. *International Ass'n of Bridge, Structural & Ornamental Iron Workers, Local Union No. 103 v. Higdon Construction Co.,* 739 F.2d 280, 283 (7th Cir.1984); *Chrysler Motors Corp. v. International Union, Allied Indus. Workers of Am.,* 748 F.Supp. 1352, 1363 (E.D.Wis.1990). In the present case, the defendant has not provided the court with a specific factual or legal basis in support of an award of prejudgment

interest. Instead, the Union simply makes a conclusory statement that the grievant would be harmed absent such an award and cites four cases where courts elected to award prejudgment interest on amounts due under arbitration awards. Under those circumstances, the defendant's request for prejudgment interest will be denied.

 The Union also claims that because the Company's complaint was frivolous under the limited standard for judicial review of arbitration awards, attorneys' fees should be assessed against the Company. Under the so-called "American Rule," a prevailing party ordinarily may not collect attorney's fees from the losing party, absent contractual or statutory authorization. *Summit Valley Indus., Inc. v. Local 112, United Bhd. of Carpenters & Joiners of Am.*, 456 U.S. 717, 721, 102 S.Ct. 2112, 2114, 72 L.Ed.2d 511 (1982). Section 301 of the Labor–Management Relations Act does not provide for the shifting of costs or fees in suits to enforce labor arbitration awards. Thus, any award of attorneys' fees is discretionary with the federal district court under Rule 11, Fed. R.Civ.P. The Seventh Circuit has consistently held that in a § 301 case, the prevailing party is entitled to attorneys' fees only when the opposing party's suit was "frivolous"—that is, brought in bad faith to harass the prevailing party rather than to win. *See, e.g., Local 879, Allied Indus. Workers of Am. v. Chrysler Marine Corp.*, 819 F.2d 786, 791 (7th Cir.1987); *Miller Brewing Co. v. Brewery Workers Local Union No. 9*, 739 F.2d 1159, 1162 (7th Cir.1984), *cert. denied*, 469 U.S. 1160, 105 S.Ct. 912, 83 L.Ed.2d 926 (1985). Perhaps one of the best ways of defining the term "frivolous," as it appears in the 1993 version of Rule 11, Fed.R.Civ.P., is to articulate what it is not. For example, the mere absence of legal precedent, the presentation of an unreasonable legal argument, or the failure to prevail on the merits of a particular legal contention (or in the entire case being litigated) cannot justify a finding of frivolousness. Another way to define the term is to provide affirmative articulations of the circumstances in which a court should find that a suit was "frivolous." For example, the term "frivolous" should connote that the legal contention of the lawsuit is utterly implausible and lacks any arguable basis, or at least is characterized by abuse or egregiousness.

In the present case, the Company's refusal to abide by the arbitrator's award was not completely without justification, nor does the record show that the plaintiff's action in this court was designed to be a frivolous or dilatory tactic. Certainly, the plaintiff's legal arguments were not utterly implausible. In short, this court does not believe that the Company intended to put the Union's "feet to the fire" by filing this suit. Unlike the situation in *Dreis & Krump Manufacturing Co. v. International Ass'n of Machinists & Aerospace Workers, Dist. No. 8*, 802 F.2d 247 (7th Cir.1986), where the company should have known that its suit was barred by the applicable statute of limitations, there was nothing so obvious in the present case to make the Company aware that its suit would fail. Therefore, the court will not award attorneys' fees against the Company.

 Finally, the Union claims that by returning the grievant to work on March 6, 1995, and then terminating him the following day for his alleged dishonesty during the arbitration, the Company has failed to abide by the arbitrator's order that the grievant be reinstated. The Company contends, on the other hand, that its second discharge of the grievant is permitted by *Chrysler Motors Corp. v. International Union, Allied Indus. Workers of Am.*, 2 F.3d 760 (7th Cir.1993). The *Chrysler Motors* case is distinguishable from the present action, however. In *Chrysler Motors*, the Seventh Circuit found that the company's action of rehiring and then simultaneously firing the grievant was permissible, given that the record showed that in fashioning his remedy, the arbitrator had refused to consider four additional incidents of misconduct the company had discovered after terminating the grievant but prior to the arbitration. 2 F.3d at 763. Thus, in *Chrysler Motors*, the company had a "fresh" reason upon which to base its discharge of the employee rather than basing the discharge on an incident which was a subject of the arbitration hearing. *Id.* at 764; *see United Paperworkers Int'l Union v. Misco,*

*Inc.,* 484 U.S. 29, 41, 108 S.Ct. 364, 372, 98 L.Ed.2d 286 (1987); *Truck Drivers Union Local 705 v. Schneider Tank Lines,* 958 F.2d 171, 174–75 (7th Cir.1992).

In the present case, however, the Company's reasons for discharging the grievant a second time clearly rest on issues examined and dismissed by the arbitrator. The Company's stated reason for the subsequent discharge is that the grievant's "testimony and related evidence at the February 17, 1995 hearing disclosed that [the grievant] had abused the Company's leave policy as well as [his] doctor's excuse in the course of furthering [his] own interests at the expense of the Company's." Amended Notice of Separation on 3/7/95 (May 1, 1995). Furthermore, the Company states in the Amended Notice of Separation that the "[the grievant's] testimony also disclosed that [he] had given false and misleading testimony in the course of the proceeding involving [his] discharge as to [his] physical capabilities and activities [he] engaged in." *Id.* The Company's stated reasons for discharging the grievant anew thus do not constitute "fresh" reasons under the meaning of *Misco* and *Schneider Tank.* Rather, they involve the precise testimony and evidence weighed by the arbitrator in crafting his arbitration award.

#### CONCLUSION

In sum, the arbitration award in this case is rationally inferable from the language and purpose of the collective bargaining agreement, and therefore it must be confirmed by this court. Indeed, even if this court would have interpreted the bargaining agreement in a different manner, the standard of review of labor arbitration awards requires the court to defer to the arbitrator's interpretation of the contract. The court has carefully considered the other arguments raised by the parties and concludes that they lack merit and therefore do not warrant discussion here. For the foregoing reasons, the defendant's motion for summary judgment is **GRANTED** and the plaintiff is hereby **ORDERED TO COMPLY** with the terms of the arbitration award. The defendant's motions for pre-

judgment interest, costs, and attorneys' fees are **DENIED. IT IS SO ORDERED.**