966 F.2d 250
 140 L.R.R.M. (BNA) 2700, 61 USLW 2064,
122 Lab.Cas. P 10,259
 LADISH COMPANY, INC., in its individual capacity and in its
capacity as administrator of Ladish Company Pension
Plan--International Association of Machinists and Aerospace
Workers, Local 1862, Plaintiffs-Appellants-Cross-Appellees,
v.
INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE
WORKERS, DISTRICT NO. 10 and Local 1862,
Defendants-Appellees-Cross-Appellants.
 Nos. 90-3494, 90-3591.
 United States Court of Appeals,
Seventh Circuit.
 Argued Oct. 15, 1991.
Decided June 25, 1992.
 
 Alfred A. Heon, David C. Hertel (argued), Whyte & Hirschboeck, Milwaukee, Wis., for plaintiff-appellee.
 Matthew R. Robbins (argued), Previant, Goldberg, Uelman, Gratz, Miller & Brueggeman, Milwaukee, Wis., for defendants-appellees.
 Before BAUER, Chief Judge, POSNER and FLAUM, Circuit Judges.
 BAUER, Chief Judge.
 
 
 1
 On February 22, 1985, Ladish Company, Inc. ("Ladish" or the "Company"), a manufacturing concern located in Cudahy, Wisconsin, and the International Association of Machinists and Aerospace Workers, District No. 10 and Local 1862 (the "Union") entered into a labor agreement effective from February 18, 1985, to February 21, 1988. Approximately three months later, on May 16, 1986, the Union filed a grievance report claiming that the Company, who is also Administrator of the employee pension plan (the "Plan"), violated the terms of the labor agreement by failing to include layoff time in the calculation of vesting and benefits under the terms of the Plan. Needless to say, the parties were unable to resolve their dispute. The labor agreement provides for arbitration in such circumstances. Section 4.07 of the agreement even maintains that "the arbitrator's decision shall be final and binding." Arbitrator's Decision Award of July 21, 1987 ("Arbitrator's Award") at 2. They, therefore, submitted the dispute to Arbitrator Edward Krinsky.
 
 
 2
 In the hearing before the arbitrator, both the Company and the Union had the opportunity to present evidence and arguments. The parties stipulated to the following issue:
 
 
 3
 Is the Company violating the contract by not giving pension credits to employees on layoff for (a) years of continuous service, (b) years of benefit service? If so, what is the appropriate remedy?
 
 
 4
 Id. The parties also stipulated that the arbitrator was to interpret only the labor agreement; he was not to interpret the Plan. See Arbitrator's Award at 11.
 
 
 5
 As the arbitrator noted, the dispute centered upon the parties' conflicting interpretations of two sections from the labor agreement. Section 5.01 of agreement provides:
 
 
 6
 Seniority is defined as the continuous length of the employee's service with the Company and shall be applied in calculating vacations, pensions, and wage dividends. Continuous service means all time from the date of employment, including time off for layoffs and authorized leaves of absence.
 
 
 7
 See Arbitrator's Award at 2. The labor agreement, at section 17.13(A), also provides that the Plan "shall continue in effect as a separate contract between the parties." Essentially, the Union maintained, as it does before us, that section 5.01 directs the Company, as administrator of the Plan, to include layoff time in the computation of Plan benefits. The Company, however, argued that section 17.13 makes clear that the labor agreement does not govern the Plan's benefit calculation. Instead, the Company contended, under section 3.4 of the Plan, which specifies the basis for the accumulation of credited hours of service, an employee receives no credit for time spent on layoff. See Appellant's Brief at 5.
 
 
 8
 On July 21, 1987, the arbitrator ruled for the Union. He determined that, because section 5.01 of the labor agreement first defines "seniority" to include time lost to layoffs and then applies seniority in calculating pensions, time lost to layoffs must be included when calculating pensions. See Arbitrator's Award at 13. Because section 17.13 contains no direct or indirect mention of the effect of layoffs on pensions, the arbitrator continued, nothing in section 17.13 conflicts with section 5.01. Arbitrator Krinsky noted:
 
 
 9
 5.01 clearly provides that time lost for layoffs shall be included in calculating pensions.... The meaning of 5.01 is clear, whether or not it is in conflict with the Pension Plan. The silence of 17.13 on the subject merely indicates that the parties have not bargained a change in the Pension Plan.
 
 
 10
 Id. With this reasoning, the arbitrator ordered the Company to include layoff time in pension benefit calculations.
 
 
 11
 On October 13, 1987, the Company sought to vacate the arbitrator's award in district court. The district court, noting the deference customarily paid to arbitrators' decisions, upheld the award. The court determined that the award drew its essence from the labor agreement, the arbitrator did not exceed his authority, and the award did not create a conflict with established law. See Decision and Order, 87-C-1177, United States District Court, Record Document 37, Appendix of Appellant ("District Court Decision") at 11. The court granted the Union's motion for summary judgment, but denied the Union's request for attorneys' fees. The Company, both in its individual capacity and as administrator of the Plan, appealed. The Union cross-appealed, claiming that the district court erred in its refusal to award attorneys' fees.
 
 
 12
 At the outset, we too recognize the well-established deference paid to arbitrators' awards. Because an arbitration clause is a key negotiated element of the collective bargaining process, arbitration decisions enjoy a high level of respect by federal courts. The standards governing review of such awards long have been settled:
 
 
 13
 The refusal of courts to review the merits of an arbitration award is a proper approach to arbitration under collective bargaining agreements. The federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the award.
 
 
 14
 United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 596, 80 S.Ct. 1358, 1360, 4 L.Ed.2d 1424 (1960). Indeed, the Supreme Court has stated plainly that because the arbitrator's award is a direct result of collective bargaining, reviewing courts should respect the intention of the parties to have arbitration resolve their dispute: "Because the parties have contracted to have disputes settled by an arbitrator chosen by them rather than by a judge, it is the arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept." United Paperworkers International Union v. Misco, Inc., 484 U.S. 29, 37-38, 108 S.Ct. 364, 370, 98 L.Ed.2d 286 (1987).
 
 
 15
 With the reasons underlying our deference to arbitration understood, we note that our review of an arbitrator's award necessarily is narrow. Indeed our review is "close to nonexistent" if the arbitrator "interprets" rather than "revises" the collective bargaining agreement. Independent Employees' Union v. Hillshire Farm Co., 826 F.2d 530, 532 (7th Cir.1987) (quoting Camacho v. Ritz-Carlton Water Tower, 786 F.2d 242, 244 (7th Cir.1986)). Specifically, we will not disturb an arbitration award so long as it "draws its essence" from the labor agreement. "[The arbitrator] may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award." Enterprise Wheel, 363 U.S. at 597, 80 S.Ct. at 1361. See also Roadmaster Corp. v. Production and Maintenance Employees' Local 504, 851 F.2d 886, 888 (7th Cir.1988).
 
 
 16
 On appeal, Ladish does not argue that the arbitration award did not draw its essence from the labor agreement. In fact, the Company does not seem to challenge the arbitrator's "two major conclusions--that section 5.01 clearly provides for including layoff time in pension calculations and that section 17.13 does not directly address the effect of layoffs on pensions...." District Court Decision at 8. Instead, the Company presents a series of contentions that essentially maintain that, if enforced, the arbitration will violate the Plan, transgress the labor agreement, and offend public policy, specifically, the duties and obligations imposed on pension plan administrators by the Employee Retirement Income Security Act of 1974 as amended ("ERISA"), 29 U.S.C. § 1100 et seq. See Appellant's Brief at 9-11. Ladish structures its contentions by separating its dual roles as employer in the collectively bargained labor agreement and administrator of the Plan. Ladish-as-Plan-administrator argues that the arbitration award should not be enforced because it violates those Plan documents that exclude layoff time from benefit calculation. Compelling an administrator to deviate from the terms of the pension plan, Ladish argues, violates the administrator's fiduciary duty under ERISA. Ladish-as-employer then suggests that the award also violates section 17.13 of the labor agreement, which mandates that the Plan be governed as a separate contract between the parties. In essence, the Company seeks to avoid enforcement of the arbitration award by advancing the inviolability of the Plan and upholding the integrity of section 17.13.
 
 
 17
 We are not persuaded by the Company's arguments. Given the substantial deference bestowed on arbitration awards, we resist any attempt to draw us into the relative merits of the dispute. After all, in W.R. Grace v. Rubber Workers, 461 U.S. 757, 103 S.Ct. 2177, 76 L.Ed.2d 298 (1983), the Supreme Court instructed that
 
 
 18
 a federal court may not overrule an arbitrator's decision simply because the court believes its own interpretation of the contract would be the better one.... Unless the arbitral decision does not draw its essence from the collective bargaining agreement, a court is bound to enforce the award and is not entitled to review the merits of the contract dispute. This remains so even when the basis for the arbitrator's decision is ambiguous.
 
 
 19
 Id. at 764, 103 S.Ct. at 2182 (quotations omitted).
 
 
 20
 With this guidance, we reject Ladish's claim that the arbitration award violates the labor agreement. Instead, we agree with the district court that the award drew its essence from that agreement. Nothing in the record suggests that the arbitrator displayed a manifest disregard for the labor agreement. He thoroughly considered the evidence and arguments of both parties, paying particular attention to the negotiating history of the Company and the Union that resulted in the present dispute. See Arbitration Award at 16-23.
 
 
 21
 As the district court correctly points out, it is not the arbitration award that created the central conflict between sections 5.01 and 17.13 of the labor agreement. The award merely represents an interpretation of the Company's obligations under the agreement, based on the specific information supplied by the parties. See District Court Decision at 10. Ladish, as a result of collective bargaining, willingly submitted to arbitration the task of resolving conflicting provisions in the labor agreement. It now cannot claim error simply because it dislikes the arbitrator's interpretation.
 
 
 22
 We also reject the argument of Ladish-as-Plan-administrator that the arbitration award compels the Company to deviate from the terms of the pension plan, thereby requiring it to breach its fiduciary duties under ERISA. See 29 U.S.C. § 1104(a)(1)(D) (Administrator must govern solely in accord with plan documents). First, as Ladish concedes, it certainly is not unusual for a company to act as both the employer in the labor agreement and administrator of the pension plan. Such an arrangement is fully permissible. See 29 U.S.C. § 1002(16)(A) and (B). See also Young v. Standard Oil (Indiana), 849 F.2d 1039, 1045 (7th Cir.) ("[A]n employer is permitted to act in a dual capacity as both the manager of its business and a fiduciary with respect to unaccrued benefits."), cert. denied, 488 U.S. 981, 109 S.Ct. 529, 102 L.Ed.2d 561 (1988). See also United Ind. Flight Officers v. United Airlines, 756 F.2d 1262, 1268-69 (7th Cir.1985) ("UIFO-I ") ("[T]he mere fact that a company has named itself as pension plan administrator or trustee does not restrict it from pursuing reasonable business behavior in negotiations concerning pension benefits not otherwise affected by the requirements of ERISA." (quoting Sutton v. Weirton Steel Division of National Steel Corp., 567 F.Supp. 1184, 1201 (N.D.W.Va.), aff'd, 724 F.2d 406 (4th Cir.1983), cert. denied, 467 U.S. 1205, 104 S.Ct. 2387, 81 L.Ed.2d 345 (1984)).
 
 
 23
 Second, these dual functions do not permit Ladish the luxury of having the results of negotiations between the parties apply to one of its roles and not to the other. In United Independent Flight Officers, Inc. v. United Air Lines, Inc., 756 F.2d 1274 (7th Cir.1985) ("UIFO-II "), we held that an employer that acts in these dual roles does not breach any fiduciary duty by agreeing during bargaining to a certain commitment, and then administering the plan in accordance with the terms of the final agreement. Id. at 1280 ("United breached no fiduciary duty in administering the plans in accordance with the terms of the Supplemental Agreement."). Similarly, in Sutton, a case whose reasoning we previously have found persuasive, see UIFO-I, 756 F.2d at 1268, the court stated:
 
 
 24
 When acting on behalf of the pension fund, there is no doubt that a fiduciary having such "dual loyalty" must act solely to benefit participants and beneficiaries. However, it is the Court's opinion here that when a corporate employer negotiates ... the negotiations that affect the terms and condition of future pension benefits ... do not implicate fiduciary duties as to the pension fund. Such negotiations are distinct from actually administering a plan and conducting transactions affecting the monies and property of the plan's fund.
 
 
 25
 Sutton, 567 F.Supp. at 1201. The arbitration award--the direct result of collective bargaining--does not implicate Ladish's fiduciary duty as administrator of the Plan. Enforcement of the arbitration award, then, will not compel Ladish to breach its duties under ERISA.
 
 
 26
 Ladish's remaining arguments--that the arbitrator lacked subject matter jurisdiction, that the award illegitimately modifies the labor agreement, that the arbitrator improperly failed to consider the Plan, and that the arbitrator lacked authority to credit certain layoff periods--similarly are rejected. We reiterate that the Company negotiated a grievance and arbitration clause in the agreement. The promise to arbitrate, as a key element of that agreement, would be an empty guarantee if the employer could avoid the promise by claiming that the award did not obligate it in its capacity as administrator. Moreover, as Judge Posner wrote for the Court in Jones Dairy Farm v. Local No. P-1236, 760 F.2d 173, 175 (7th Cir.), cert. denied, 474 U.S. 845, 106 S.Ct. 136, 88 L.Ed.2d 112 (1985), "[i]f a party voluntarily and unreservedly submits an issue to arbitration he cannot later argue that the arbitrator had no authority to resolve it." Suffice it to say that, where the arbitrator conscientiously interprets the labor contract and "determines remedies from the violations that he finds, courts have no authority to disagree with his honest judgment in that respect." Misco, 484 U.S. at 38, 108 S.Ct. at 371.
 
 
 27
 As a final matter, we reject the Union's cross-appeal for attorneys' fees. The district court determined that awarding fees is not appropriate in this case. We find no abuse of discretion in that decision. Mars Steel Corp. v. Continental Bank N.A., 880 F.2d 928, 933-34 (7th Cir.1989). The present case involves complex issues. Ladish's arguments, though not successful, were far from frivolous. We see no reason to disturb the district court's refusal to award the Union attorneys' fees.
 
 
 28
 For the foregoing reasons, the judgment of the district court is
 
 
 29
 AFFIRMED.