**BALL–FOSTER GLASS CONTAINER CO., L.L.C. (n/k/a Saint–Gobain Containers, Inc.), Plaintiff,**

v.

**AMERICAN FLINT GLASS WORKERS UNION, AFL–CIO and American Flint Glass Workers Union, AFL–CIO, Local No. 150, Defendants.**

**No. Civ. 1:01CV176.**

United States District Court,
N.D. Indiana,
Fort Wayne Division.

Jan. 3, 2002.

Jeffrey M. Mallamad, Karl L. Mulvaney, Michael W. Padgett, Bingham McHale, LLP, Indianapolis, IN, for plaintiff.

Jules L. Smith, pro hac vice, Blitman & King, LLP, Rochester, NY, for defendant.

### ORDER

WILLIAM C. LEE, Chief Judge.

This matter is before the court on cross-motions for summary judgment. The defendants, American Flint Glass Workers' Union, AFL–CIO ("AFGWU") and American Flint Glass Workers' Union, Local No. 150, AFL–CIO ("Local No. 150", and, together with the AFGWU, the "Union"), filed their motion for summary judgment on September 20, 2001. The plaintiff, Ball–Foster Container Co., LLC, (n/k/a Saint–Gobain Containers, Inc.)("Saint–Gobain"), filed its cross-motion for summary judgment on October 22, 2001. The parties completed briefing both motions on December 12, 2001.

For the following reasons, the Union's motion for summary judgment will be granted in part and denied in part, and Saint–Gobain's cross-motion for summary judgment will be denied.

### Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). However, Rule 56(c) is not a requirement that the moving party negate his opponent's claim. *Fitzpatrick v. Catholic Bishop of Chicago*, 916 F.2d 1254, 1256 (7th Cir.1990). Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an ele-

ment essential to that party's case, and in which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The standard for granting summary judgment mirrors the directed verdict standard under Rule 50(a), which requires the court to grant a directed verdict where there can be but one reasonable conclusion. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A scintilla of evidence in support of the non-moving party's position is not sufficient to successfully oppose summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff." *Id. In Re Matter of Wildman,* 859 F.2d 553, 557 (7th Cir.1988); *Klein v. Ryan,* 847 F.2d 368, 374 (7th Cir.1988); *Valentine v. Joliet Township High School District No. 204,* 802 F.2d 981, 986 (7th Cir.1986). No genuine issue for trial exists "where the record as a whole could not lead a rational trier of fact to find for the nonmoving party." *Juarez v. Ameritech Mobile Communications, Inc.,* 957 F.2d 317, 322 (7th Cir.1992)(quoting *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

■ Initially, Rule 56 requires the moving party to inform the court of the basis for the motion, and to identify those portions of the "pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits", if any, which demonstrate the absence of a genuine issue of material fact, *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. The non-moving party may oppose the motion with any of the evidentiary materials listed in Rule 56(c), but reliance on the pleadings alone is not sufficient to withstand summary judgment. *Goka v. Bobbitt,* 862 F.2d 646, 649 (7th Cir.1988); *Guenin v. Sendra Corp.,* 700 F.Supp. 973, 974 (N.D.Ind.1988); *Posey v. Skyline Corp.,* 702 F.2d 102, 105 (7th

Cir.), *cert. denied,* 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983).

■ So that the district court may readily determine whether genuine issues of material fact exist, under Local Rule 56.1, the moving party is obligated to file with the court a "Statement of Material Facts" supported by appropriate citation to the record to which the moving party contends no genuine issues exist. In addition, the non-movant is obligated to file with the court a "Statement of Genuine Issues" supported by appropriate citation to the record outlining all material facts to which the non-movant contends exist that must be litigated. *See, Waldridge v. American Hoechst Corp. et al.,* 24 F.3d 918 (7th Cir.1994). In ruling on a summary judgment motion the court accepts as true the non-moving party's evidence, draws all legitimate inferences in favor of the non-moving party, and does not weigh the evidence or the credibility of witnesses. *Anderson,* 477 U.S. at 249–251, 106 S.Ct. at 2511. Furthermore, in determining the motion for summary judgment, the court will assume that the facts as claimed and supported by admissible evidence by the moving party are admitted to exist without controversy, except to the extent that such facts are controverted in the "Statement of Genuine Issues" filed in opposition to the motion. L.R. 56.1

■ Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute. *Id.* The issue of fact must be genuine. Fed.R.Civ.P. 56(c), (e). To establish a genuine issue of fact, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at

586, 106 S.Ct. 1348; *First National Bank of Cicero v. Lewco Securities Corp.,* 860 F.2d 1407, 1411 (7th Cir.1988). The non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *Id.* A summary judgment determination is essentially an inquiry as to "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–252, 106 S.Ct. 2505. Finally, the court notes that, "[i]t is a gratuitous cruelty to parties and their witnesses to put them through the emotional ordeal of a trial when the outcome is foreordained" and in such cases summary judgment is appropriate. *Mason v. Continental Illinois Nat'l Bank,* 704 F.2d 361, 367 (7th Cir.1983).

## Discussion

On April 27, 2001, Saint–Gobain commenced this action seeking vacatur of an arbitration award. On September 7, 2001, the Union filed a counterclaim seeking enforcement of the arbitration award. In the motions presently before the court, the Union requests summary judgment enforcing the arbitration award and ordering Saint–Gobain's compliance therewith, dismissing Saint–Gobain's complaint, and awarding the Union the attorneys fees and costs incurred in this litigation. Saint–Gobain's cross-motion for summary judgment requests that the arbitrator's decision be vacated in its entirety.

Saint–Gobain is a manufacturer of glass containers for the food and beverage industry. The company came into existence in September 1995 when it acquired plants and equipment formerly owned and operated by Ball Glass Container Corporation and Foster–Forbes Division of American National Can Co. Saint–Gobain currently operates 18 plants, all former Ball Glass Container Corporation or Foster–Forbes plants, located throughout the United States and employs approximately 6,000 employees. Among these 6,000 employees, there are approximately 200 bargaining-unit employees, including the grievant, represented by the defendant Union. The remainder of the bargaining-unit employees are represented by the Glass, Molders, Pottery, Plastics & Allied Workers International Union, AFL–CIO, CLC (GMP).

Employees represented by the defendant Union worked under the jurisdiction of a multi-employer collective bargaining agreement negotiated between the Union and the Glass Container Industrial Relations Council (GCIRC), of which Saint–Gobain is a member employer. The collective bargaining agreement (CBA) between the Union and the GCIRC, effective September 1, 1996 through August 31, 1999, was in effect at the time of the filing of the grievance underlying the present motions. The CBA contains provisions regarding pension benefits in Article 18 (Pensions) and Article 20 (Restoration of Service). In addition, Saint–Gobain (then Ball–Foster Glass Container Co., LLC) entered into a Letter of Understanding with the Union dated April 11, 1996 with respect to pension benefits. This Letter of Understanding was attached to and made a part of the CBA.

On December 30, 2000, Arbitrator Michael E. Zobrak issued an arbitration decision and award in which he determined that employee Homer Vogan was entitled to retirement benefits service for his employment at the Foster–Forbes Glass Company plant in Oil City, Pennsylvania between April 19, 1966 and April 13, 1984. Saint–Gobain has refused to comply with the Arbitrator's Decision, which directed that Mr. Vogan be credited with retirement benefits service for his prior employment at the Oil City plant.

The CBA, in Article 25, Presentation of Grievances, provided for final and binding

arbitration of contract grievances in dispute between the parties:

> Step 5. If the grievance is not settled in Step 4, it may be submitted to arbitration at the request of either the National President of the Union or the Manufacturer, and the decision of the arbitrator will be final and binding.

The Union filed a grievance on behalf of Mr. Vogan on April 11, 1997. The grievance asserted that Saint–Gobain was in violation of Article 18 of the CBA[1] and the April 11, 1996 Letter of Understanding.[2] The grievance demanded that Saint–Gobain provide retirement benefits service credit for Mr. Vogan for his eighteen years employment at the Foster–Forbes Oil City plant.

Saint–Gobain maintains three pension plans for bargaining-unit employees. One pension plan, entitled "Ball–Foster Glass Container Co., L.L.C. Hourly Pension Plan (Covering Former Ball Glass Employees)" ("Ball–Foster Plan"), provides pension benefits for Saint–Gobain bargaining-unit employees employed at the plants formerly owned by Ball Glass Container Corporation. Among the former Ball Glass Container Corporation plants covered by the Ball–Foster plan is the Port Allegany, Pennsylvania plant at which the grievant is currently employed. The Ball–Foster plan provides pension benefits for bargaining-unit employees represented by both the GMP and the defendant Union.

Two pension plans, entitled "The ANCC Foster–Forbes Glass Division Hourly Retirement Plan" and "Foster–Forbes Glass Company Service Retirement Plan" (collectively "Foster–Forbes plans"), provide pension benefits for Saint–Gobain bargaining-unit employees employed at the plants formerly owned by Foster–Forbes. At the time of the 1995 acquisition of certain Foster–Forbes plants, Saint–Gobain was substituted for American National Can Co. as the Plan Sponsor for both Foster–Forbes pension plans. Like the Ball–Foster plan, the Foster–Forbes plans provide pension benefits for bargaining-unit employees represented by both the GMP and the defendant Union. At the time of the acquisition, the ANCC Foster–Forbes Glass Division Hourly Retirement Plan covered employees at the plants located in Maywood, California; Milleville, New Jersey; Waxahachie, Texas; and Wilson, North Carolina. The Foster–Forbes Glass Company Service Retirement Plan covered employees at the plants located in Marion, Indiana; Burlington, Wisconsin; Milford,

---

1. Article 18, Pensions, provided in relevant part:

 Pension benefits and the provisions relating thereto under the 1993–1996 contract shall remain in effect in their entirety through March 31, 1998, and then extended in their entirety under this contract through August 31, 1999, except as changed by this contract. Pension benefits and other revisions changed as a result of this contract shall be effective as of April 1, 1996, unless otherwise indicated, and shall remain in effect in their entirety under this contract through August 31, 1999.

2. The Letter of Understanding stated:

 This letter outlines the pension benefit applicable to AFGWU employees of Ball–Foster Glass Container Co., L.L.C., who are members of the local unions at the Ball–Foster Glass Container Co, L.L.C. plants listed in this 1996–1999 AFGWU–GCIRC Contract.

 The employees benefit service is used to determine the amount of their pension benefit. The employee earns 1/12 year of benefit service for each month after September 15, 1995, in which his/her [sic] are credited with one or more hours of service.

 In addition, the benefit service the former Ball employees earned under the Ball plan or the benefit service the former Foster–Forbes employees earned under the Foster–Forbes plan is credited under the Ball–Foster plan, provided it has not been canceled by a break in service.

Massachusetts; and Pevely, Missouri. According to Saint–Gobain, neither of the Foster–Forbes plans provide pension benefits for former employees of Foster–Forbes Oil City, Pennsylvania plant that closed in 1984. The parties have stipulated that the 1995 asset purchase agreement between Saint–Gobain and Foster–Forbes specifically excluded the Oil City plant from the assets acquired by Saint–Gobain.

An arbitration hearing was held before Arbitrator Zobrak on July 19, 2000 in Moon Township, Pennsylvania. The Union and Saint–Gobain fully participated in the proceeding. By Decision dated December 30, 2000, the Arbitrator granted the Union's grievance, ruling that Mr. Vogan was entitled to the disputed retirement benefits service.

In the motions presently before the court, the Union argues that the Arbitrator's Decision "draws its essence" from the CBA, and must be enforced. Saint–Gobain, however, argues that the Arbitrator's Decision ignores the plain language of the CBA, that the Arbitrator disregarded unrefuted evidence concerning the intent of the parties in adopting the Letter of Understanding, and that the Arbitrator's Decision violates public policy. The court will discuss each of these issues in detail below, after a review of the relevant standard of review.

"The refusal of courts to review the merits of an arbitration award is the proper approach to arbitration under collective bargaining agreements. The federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the award." *Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 596, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). "As long as the arbitrator's award 'draws its essence from the collective bargaining agreement' and is not merely 'his own brand of industrial justice',

the award is legitimate." *Paperworkers v. Misco, Inc.*, 484 U.S. 29, 36, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987)(quoting *Enterprise Wheel*, 363 U.S. at 597, 80 S.Ct. 1358). Thus, "[c]ourts are not authorized to review the arbitrator's decision on the merits despite allegations that the decision rests on factual errors or misinterprets the parties agreement." *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 121 S.Ct. 1724, 149 L.Ed.2d 740 (2001). Accordingly, so "long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *Misco, Inc.*, 484 U.S. at 38, 108 S.Ct. 364.

Likewise, the Seventh Circuit Court of Appeals has stated:

> We do not want to be plagued by cases in which companies or unions refuse to comply with arbitration awards merely because they think the arbitrator clearly misinterpreted the collective bargaining agreement. If parties to collective bargaining contracts are unhappy with arbitration awards they can bargain for a different method of selecting arbitrators, or for panels of arbitrators, trial or appellate.

*Ethyl Corp. v. Steelworkers*, 768 F.2d 180, 187 (7th Cir.1985); *accord Dean Foods Co. v. Steel Workers*, 911 F.Supp. 1116, 1123 (N.D.Ind.1995)("broad judicial review of arbitrators decisions would render such decisions practically meaningless, as they would almost never be considered final").

An award may be said not to "draw its essence" from the labor contract only if it "ignore[d] the [contract s] plain language", *Misco, Inc.*, 484 U.S. at 38, 108 S.Ct. 364, such that "the arbitrator *must* have based his award on some body of thought, or feeling, or policy, or law that is

outside the contract...." *Ethyl Corp.*, 768 F.2d at 184–85 (emphasis in original). Any reasonable doubt on this point must be resolved in favor of enforcing the award. *Id.* at 185; *Dean Foods*, 911 F.Supp. at 1123 ("a court may not vacate the award even if it finds the issue for the award is ambiguous or disagrees with the arbitrator's conclusions under the law").

The Arbitrator's Decision found that, based on the April 11, 1996 Letter of Understanding, the grievant was entitled to be credited pension benefits for service at the Oil City plant. Whether the Letter of Understanding should be controlling in this matter was a key issue of contention during the arbitration proceeding. Saint–Gobain argued that Article 20 of the CBA is the more specific contract provision and therefore should be given precedence.[3]

The Arbitrator concluded that Article 20 was a general provision which "should be restricted by the specific" provision contained in the Letter of Understanding. Saint–Gobain now argues that the Arbitrator ignored the prescripts of Article 20 completely, thereby acting outside his authority in this matter. Saint–Gobain contends that the Arbitrator's Decision should be vacated because it does not draw its essence from the contract.

In support of its argument, Saint–Gobain points out that Article 20 of the CBA contains three separate and distinct provisions regarding the restoration of service for pension credit purposes. First, Article 20 states that a former employee must have two (2) or more years of service with a Manufacturer. Second, Article 20 states that the former employee must have been or is re-employed by that Manufacturer. Third, Article 20 provides that pension

service credit will be restored after an employee has been re-employed by that same Manufacturer for three years. Saint–Gobain argues that the Arbitrator limited his analysis of Article 20 to a determination of whether Foster–Forbes was considered a "Manufacturer" under the CBA. According to Saint–Gobain, the Arbitrator's limited analysis stemmed from a misunderstanding of Saint–Gobain's argument. That is, the Arbitrator believed that Saint–Gobain's position was that it was not a "Manufacturer" under the CBA, whereas, according to Saint–Gobain, its actual position was that it was not the *same* Manufacturer as Foster–Forbes, thereby precluding pension service credit for the grievant under Article 20.

Saint–Gobain maintains that by focusing on whether Foster–Forbes was a "Manufacturer" under the CBA, the Arbitrator ignored the second, and more restrictive, provision of Article 20 which mandates that pension service credit will be restored if the employee "has been or is re-employed by that Manufacturer". Saint–Gobain states that it is overwhelmingly clear that the grievant was never re-employed by "that Manufacturer", namely Foster–Forbes. Rather, upon the closing of the Oil City plant, the grievant was employed by a Foster–Forbes competitor, Pierce Glass Division of TBG, Inc., at it Port Allegany, Pennsylvania plant. The Port Allegany plant ultimately was owned by Ball Glass Container Corporation before it was acquired by Ball–Foster Glass Container Co., LLC (n/k/a Saint–Gobain). Thus, since at no time after the Oil City plant closing has the grievant been re-employed by Foster Forbes, Saint–Gobain concludes that the grievant is not entitled

---

3. Article 20 states:

A former employee who has two (2) or more years of continuous service with a Manufacturer, and who has been or is re-employed by that Manufacturer, shall be

given credit toward vacation and pension rights for prior service with such Manufacturer after he has been re-employed for a period of three (3) years.

to any restoration of pension credit under the provisions of Article 20.

Saint–Gobain further argues that even if the Arbitrator correctly concluded that the Letter of Understanding contains more specific terms than Article 20, that does not mean that Article 20 is no longer a valid section of the CBA. Saint–Gobain maintains that the Letter of Understanding was written in the context of the existence of Article 20, and there is no intent expressed in the Letter of Understanding that it should supplant Article 20 or that Article 20 is superceded by the Letter of Understanding. Saint–Gobain concludes that the Arbitrator ignored the plain language of Article 20 and therefore acted outside the scope of his authority in resolving disputes under the CBA, and the Decision does not draw its essence from the CBA as required.

Saint–Gobain also specifically argues that the Arbitrator made no attempt to ascertain the intent of the parties, despite unrefuted evidence offered by Saint–Gobain concerning the parties intent. Saint–Gobain points out that the Arbitrator's Decision concedes that the Letter of Understanding is ambiguous concerning its application to the facts presented in the arbitration. As a result of this ambiguity, the Arbitrator was required to determine the intent of the parties in adopting the Letter of Understanding. Under the Steelworkers Trilogy, such ambiguity may only be properly resolved by considering the parties bargaining history and past practices the industrial common law [that] is equally a part of the bargaining agreement although not expressed in it. *International Woodworkers of America, U.S. AFL–CIO v. Weyerhaeuser Co.*, 7 F.3d 133 (8th Cir.1993)(quoting *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 581–82, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960)). In the present case, Saint–Gobain argues that it offered unre-

futed evidence at the arbitration hearing concerning its intent in adopting the Letter of Understanding, and that the Arbitrator disregarded such evidence and thereby acted outside the scope of his authority in resolving the grievance. Pertinent parts of the Arbitrator's Decision are reproduced below, as follows:

> The question presented in this matter is whether the Grievant is entitled to be fully credited under the Ball–Foster pension plan with pension benefit service he earned under the Foster–Forbes plan as an ANCC/Foster–Forbes employee at the Oil City plant.
>
> The Company argues that pursuant to Article 20 of the Agreement, the Grievant is not entitled to the requested credit. It is noted that Article 20 states as follows:
>
>> A former employee who has two (2) or more years with a Manufacturer, and who has been or is re-employed by that Manufacturer, shall be given credit toward vacation and pension rights for prior service with such Manufacturer after he has been re-employed for' a period of three (3) years.
>
> As stipulated by the parties, the Grievant earned eighteen years of pension benefit service while employed with Foster–Forbes and ANCC/Foster–Forbes at the Oil City plant. It is the Company's argument that ANCC/Foster–Forbes is not a Manufacturer as defined by the Agreement. Consequently, it maintains that it is not liable for the Grievant's pension benefit service acquired under the Foster–Forbes plan.
>
> A review of the Agreement reveals that in the Preamble, Manufacturer is described as those plants listed at the end of this contract. On pages 102 and 103 of the Agreement, member companies are listed along with plant locations.

ANCC/Foster–Forbes is not included. However, after careful consideration, it is concluded that this fact is not determinative of the issue presented since the Company admittedly has credited the pension benefit service of three other former ANCC/Foster–Forbes employees. Those employees earned benefit service credit while employed by ANCC/Foster–Forbes at its Oil City plant during the same time period that the Grievant was employed there, as well as just prior to the formation of Ball–Foster. Since the Company recognized former ANCC/Foster–Forbes benefit service earned by at least three other employees, it is determined that the absence of ANCC/Foster–Forbes from the Manufacturer list contained in the Agreement does not automatically preclude the Grievant from receiving benefit service credit.

A further review of the entire Agreement reveals that Article 20 provides general language regarding the restoration of prior pension benefit service. In contrast, various Letters of Understanding, attached and incorporated into the Agreement, set forth various specific agreements between the parties regarding the restoration rights of particular bargaining unit members. As the Grievant is a bargaining unit member of AF-GWU, the pertinent Letter of Understanding is that dated April 11, 1996, which contains the following relevant language:

> the benefit service the former Foster–Forbes employees earned under the Foster–Forbes plan is credited under the Ball–Foster plan, provided it has not been canceled by a break in service.

It is a general rule of contract interpretation that when two contract provisions deal with the same subject, the meaning of the general provision should be restricted by the specific provision. As

such, the language of the April 11, 1996 Letter of Understanding must be given precedence.

\* \* \* \* \* \*

In reaching this conclusion [that the Grievant is entitled to the requested pension credit], it is noted that the Company argued that the April 11, 1996 Letter of Understanding was only intended to recognize the pension benefit service of former Ball and Foster–Forbes employees at the time of the Ball–Foster creation in 1995. It explains that this intent is consistent with the fact that three other ANCC/Foster–Forbes employees were given credit for their service at the Oil City plant. The Company maintains that since the three employees were ANCC/Foster–Forbes employees immediately before the creation of Ball–Foster, the April 11, 1996 Letter of Understanding provided them with credit for their former pension service.

While this may have been the Company's intent through the April 11, 1996 Letter of Understanding, the only support for this interpretation is the testimony of the Company's representative, Vice–President Lanford. The actual language included in the letter does not limit its application as argued by the Company. Rather, it merely states that benefit service of former Foster–Forbes employees earned under the Foster–Forbes plan is credited under the Ball–Foster plan. Furthermore, other Letters of Understanding incorporated into the Agreement contain language limiting their applicability to employees in other pension plans immediately before joining the Ball–Foster Corporation. As such, it is apparent that the Company knew how to limit the scope of the April 11, 1996 Letter of Understanding had it chosen to do so. As the Company drafted the Letter of Understanding, any

ambiguity should be construed against it.

Arbitrator's Decision at 10–12.

It seems abundantly clear that the Arbitrator was "arguably construing or applying the contract and acting within the scope of his authority" when he issued his Decision. *Misco, Inc.*, 484 U.S. at 38, 108 S.Ct. 364. The record does not support Saint–Gobain's argument that the Arbitrator ignored Article 20. Rather, the record reveals that the Arbitrator clearly understood that he had to choose which provision, Article 20 or the Letter of Understanding, was controlling. The Arbitrator found the Letter of Understanding to be controlling. This court clearly does not have the authority to vacate the Arbitrator's interpretation of the parties CBA. *Arch of Illinois v. District 12, United Mine Workers of America*, 85 F.3d 1289, 1293 (7th Cir.1996)(if award is even arguably based on arbitrator's interpretation of CBA, it must be enforced by reviewing court); *Ethyl Corp. v. Steelworkers*, 768 F.2d 180, 187 (7th Cir.1985).

Furthermore, Saint–Gobain's contention that the Arbitrator misunderstood its argument is belied by the Decision itself, wherein the Arbitrator set forth Saint–Gobain's contentions as follows:

> According to the Company, this language [of Article 20] limits pension benefit credit to those employees re-employed by the same Manufacturer. It asserts that Manufacturer is defined on pages 102 and 103 of the Agreement, which notably does not include ANCC/Foster–Forbes. The Company maintains that Ball–Foster has no relation to ANCC other than the purchase of certain ANCC assets in 1995, which specifically excluded the Oil City plant at which the Grievant was employed. Since Ball–Foster is not the same Manufacturer as ANCC and did not purchase the

Grievant's former place of employment, the Company asserts that it is not liable for the Grievant's pension benefit.

Decision at 8.

Likewise, Saint–Gobain's argument that the Arbitrator made no attempt to ascertain the intent of the parties is also discredited by the Decision itself. The Arbitrator clearly considered Saint–Gobain's evidence of intent when he stated: " the only support for this interpretation [of intent] is the testimony of the Company's representative, Vice–President Lanford". (Decision at 12). However, the Arbitrator found this evidence to be insufficient in light of the language of the Letter of Understanding, and also in light of the language of other Letters of Understanding incorporated in the CBA that contain limiting language. (*Id.*). Again, it is precisely situations like this where a court's review of an arbitrator's decision is extremely limited. *Paperworkers v. Misco, Inc.*, 484 U.S. 29, 36, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987): *Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 596, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960)("The refusal of courts to review the merits of an arbitration award is the proper approach to arbitration under collective bargaining agreements.").

Therefore, this court finds that the Arbitrator's Decision "draws its essence" from the CBA and, accordingly, vacatur of the award is not permissible and the award will be enforced.

 Next, the court will consider Saint–Gobain's argument that the Arbitrator's Decision violates public policy. It is a well-settled rule of law that courts may not enforce arbitration awards that are contrary to public policy. *Eastern Associated Coal Corp. v. Mine Workers*, 531 U.S. 57, 121 S.Ct. 462, 148 L.Ed.2d 354 (2000); *Paperworkers v. Misco, Inc.*, 484 U.S. 29, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987); *W.R.*

*Grace & Co. v. Rubber Workers,* 461 U.S. 757, 103 S.Ct. 2177, 76 L.Ed.2d 298 (1983). "If the contract as interpreted by [the arbitrator] violates some explicit public policy, we are obliged to refrain from enforcing it." *W.R. Grace & Co.,* 103 S.Ct. at 2183. Such a public policy must be well defined and dominant, and is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests. *Id.; Misco,* 108 S.Ct. at 373.

■■■ In the present case, Saint–Gobain argues that enforcement of the Arbitrator's Decision would run directly counter to the Employee Retirement Income Security Act of 1974 ("ERISA"), which requires Saint–Gobain to administer its pension plans solely in accordance with the documents and instruments governing the plan. 29 U.S.C. § 1104(a)(1)(D). Saint–Gobain points out that the specific award contained in the Arbitrator's Decision states that "[t]he Grievant is entitled to credit for pension benefit service earned under the Foster–Forbes plan." (Decision at 1). However, the Decision does not specify which plan should be used to provide pension service credit for the grievant. Saint–Gobain claims that in referring to "the Foster–Forbes plan" the Decision clearly references service earned under the plan maintained by Foster–Forbes for its Oil City plant, a plan that was discontinued in 1984. Saint–Gobain contends that it is unable to provide credit for the grievant under any of the three plans it maintains because none of the three pension plans appropriately provide service credit for time employed at Foster–Forbes closed Oil City plant. Saint–Gobain states that the Ball–Foster plan under which the grievant is currently accruing service credit does not provide benefits for employment at any Foster–Forbes plant, particularly a

plant closed 11 years prior to the formation of Saint–Gobain. Saint–Gobain further states that by their explicit terms, neither of the Foster–Forbes plans assumed by Saint–Gobain in its acquisition of certain Foster–Forbes assets provides benefits for Oil City service. Thus, Saint–Gobain concludes that requiring it to credit the grievant with pension service credit under any of the three plan documents would cause it to violate its fiduciary duties under ERISA, as pension benefits are a mandatory subject of bargaining and amendment to pension plans require the consent of the Union.

However, as the Union points out, the Arbitrator was asked to decide whether Saint–Gobain had violated its contractual obligations, not what the pension plans provided or whether its plan administration was proper. The Union takes the position that the Arbitrator appropriately did not specify precisely how the parties should implement the award, and that Saint–Gobain's obligation to provide service credit to the grievant could be accomplished in any number of ways, including amending one or more plans, creating a new plan, or purchasing an annuity.

The Union further points out that Saint–Gobain has the unilateral authority under ERISA to amend each of the three pension plans. *See* 29 U.S.C. § 1102. In fact, the Ball–Foster plan provides that "[t]he Company reserves the right to make from time to time any amendment or amendments to this Plan which do not cause any part of the plan to be used for, or diverted to, any purpose other than the exclusive benefit of participants...." (Ball–Foster Plan at 41). Similarly, each of the Foster–Forbes plans refers to the Company's "reservation of authority to amend the pension plan, [which] has been amended from time to time". (Foster–Forbes Plans at 2).[4]

4. Saint–Gobain acknowledges that its plan documents permit unilateral amendment un-

Additionally, Saint–Gobain's position has been explicitly rejected by the Seventh Circuit Court of Appeals in *Ladish Company, Inc. v. International Association of Machinists and Aerospace Workers, District No. 10*, 966 F.2d 250 (7th Cir.1992). In *Ladish,* the Court stated:

> We also reject the argument of Ladish–as–Plan administrator that the arbitration award compels the Company to deviate from the terms of the pension plan, thereby requiring it to breach its fiduciary duties under ERISA. *See* 29 U.S.C. § 1104(a)(1)(D) (Administrator must govern solely in accord with plan documents). First, as Ladish concedes, it certainly is not unusual for a company to act as both the employer in the labor agreement and administrator of the pension plan. Such as arrangement is fully permissible. (Citations omitted.)
>
> Second, these dual functions do not permit Ladish the luxury of having the results of negotiations between the parties apply to one of its roles and not to the other. In *United Independent Flight Officers, Inc. v. United Air Lines, Inc.*, 756 F.2d 1274 (7th Cir.1985) (UIFO–II), we held that an employer that acts in these dual roles does not breach any fiduciary duty by agreeing during bargaining to a certain commitment, and then administering the plan in accordance with the terms of the final agreement. *Id.* at 1280 ( United breached no fiduciary duty in administering the plans in accordance with the terms of the Supplemental Agreement.). Similarly, in *Sutton,* a case whose reasoning we

previously have found persuasive, *see UIFO–I*, 756 F.2d at 1268, the court stated:

> When acting on behalf of the pension fund, there is no doubt that a fiduciary having such "dual loyalty" must act solely to benefit participants and beneficiaries. However, it is the Court's opinion here that when a corporate employer negotiates ... the negotiations that affect the terms and condition of future pension benefits ... do not implicate fiduciary duties as to the pension fund. Such negotiations are distinct from actually administering a plan and conducting transactions affecting the monies and property of the plan's fund.

*Sutton,* 567 F.Supp. at 1201. The arbitration award the direct result of collective bargaining does not implicate Ladish's fiduciary duty as administrator of the Plan. Enforcement of the arbitration award, then, will not compel Ladish to breach its duties under ERISA.

*Ladish,* 966 F.2d at 253–54. Likewise, in the present case, enforcement of the arbitration award will not force a violation of ERISA. as the award is the product of the CBA. Therefore, the court will grant the Union's request for enforcement of the arbitration award.

 The court will next address the Union's request for attorney fees. A prevailing party is entitled to attorney's fees to confirm an arbitration award where the losing party's refusal to comply has no merit, or is frivolous. A refusal to comply is considered frivolous where the losing

der ERISA, but argues that it is still required to bargain plan amendments with the Union. (Reply Brief at 7). However, as Saint–Gobain bargained for the binding arbitration clause it has effectively bargained to have plan dis-

putes settled by the arbitrator, as happened in this case. See discussion of *Ladish Company, Inc. v. International Association of Machinists and Aerospace Workers, District No. 10,* 966 F.2d 250 (7th Cir.1992), *infra.*

party acts in bad faith in order to harass the prevailing party. *Chrysler Motors v. Allied Ind. Workers,* 959 F.2d 685 (7th Cir.1992).

 The Union argues that since there is no basis upon which the award may be vacated, Saint–Gobain's refusal to comply is meritless, and its delay can be construed only as an effort to harass the Union. Notably, the Union cites no evidence which would support a finding that Saint–Gobain acted to harass the Union, and the record clearly does not support such a finding. Nor has the Union indicated that any harm has resulted from Saint–Gobain's non-compliance with the Arbitrator's Decision. The CBA and pension plans at issue in this case are rather complex and intertwining, and Saint–Gobain's position before this court was based on rational legal arguments. Therefore, the Union's request for attorney fees will be denied.

### Conclusion

On the basis of the foregoing, Saint–Gobain's motion for summary judgment is denied. Further, the Union's motion for summary judgment is granted in part (as to enforcement of the arbitration award) and denied in part (as to the request for attorney fees). The court hereby ORDERS enforcement of the arbitration award and ORDERS Saint–Gobain's compliance therewith.